**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SKIMDEVIL PURE, L.L.C. a Florida limited liability company d/b/a Skimdevil, | |
|      Plaintiff, | Case No.   6:21-cv-954 |
| v. | DEMAND FOR JURY TRIAL |
| SKIMBOT, L.L.C., an Arizona limited liability company, MIROSLAV KREMECEK, an individual, POOLZOOM, L.L.C., a Texas limited liability company, and DOES 1–10, inclusive, | |
|      Defendants. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Skimdevil Pure, L.L.C. ("Skimdevil Pure") complains and alleges as follows against Skimbot, L.L.C. ("Skimbot"), Miroslav Kremecek ("Kremecek"), and PoolZoom, L.L.C. ("PoolZoom") (collectively "Defendants").

Plaintiff is informed and believes, and upon such information and belief, alleges the following:

### I.
### INTRODUCTION

1.    This is a civil action for patent infringement under 35 U.S.C. § 271 et seq., misappropriation of trade secrets under both 18 U.S.C. § 1836 et seq. and under Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, et seq.; for copyright infringement under 17 U.S.C. §§ 101 et. seq.; for conversion; for intentional interference with an economic advantage; for unfair competition in violation of the Lanham Act arising under 15 U.S.C. §§ 1125 et. seq., and for breach of contract.

2.     Defendants obtained and wrongfully used Skimdevil's proprietary information, including trade secrets and other confidential information, its copyright protected work and related products, for Defendants' own benefit.  Defendant Kremecek also breached agreements and violated contractual obligations.

3.     Plaintiff seeks injunctive relief to stop the infringement.  Plaintiff also seeks money damages to compensate Plaintiff for the harm caused by the Defendants and disgorgement of Defendants' ill-gotten gains, as well as attorneys' fees and costs.

## II.
## THE PARTIES

4.     Skimdevil Pure is a Florida limited liability company, having a principal place of business at 11161 E. State Road 70, Suite 110-224, Lakewood Ranch, Florida 34202.

5.     Miroslav Kremecek, is a Czech Republic national, residing at Kostelec 319, P.O. BOX 9, 697 01 Kyjov, Czech Republic.

6.     Skimbot is an Arizona limited liability company, having a principal place of business at 7126 E. Osborn, Rd, Unit 3008, Scottsdale, Arizona 85251.

7.     PoolZoom is a Texas limited liability company, having a principal place of business at 3814 Ridge Country, San Antonio, Texas 78247.

8.     The true names, identities and capacities, whether individual, associate, corporate or otherwise, of Defendant DOES 1 to 10, inclusive, and each of them ("the DOE Defendant"), are unknown to Skimdevil at this time, who therefore sues the DOE Defendant by such fictitious names.  When the true names and capacities or participation of the DOE Defendant is ascertained, Skimdevil will amend this complaint to assert the true names, identities and capacities.  Skimdevil is informed and believes and thereon alleges that each of the DOE Defendant sued herein is responsible for the wrongful acts alleged herein, and is therefore liable

to Skimdevil in some manner for the events and happenings alleged in this complaint.  Skimdevil is informed and believes and thereon alleges that at all times herein mentioned, the DOE Defendant were and are doing business and/or residing in this District.

### III.
### JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Skimdevil asserts federal claims under the Patent Act, 35 U.S.C. § 271 et. seq.; the Defend Trade Secrets Act ("DTSA"),; and under Lanham Act, 17 U.S.C. §§ 101 et. seq. and 15 U.S.C. §§ 1121 et. seq.  The Court has supplemental or pendant jurisdiction over Skimdevil's remaining claims, which form part of the same case or controversy as the federal question claims, pursuant to 28 U.S.C. § 1367.

10.     Upon information and belief, general personal jurisdiction over the Defendants is proper because Defendants, either directly or through an affiliate entity or agent, conduct business in and maintain continuous contact with the State of Texas through, inter alia, purposefully entering the Texas stream of commerce.  Further, this court has specific jurisdiction over the Defendants because this case arises out of the Defendants' purposefully directed sales, marketing, and distribution of infringing products in the district, and committed other acts complained of *infra* within this district.

11.     Alternatively, upon information and belief, Kremecek's aggregate contacts with the United States, through, *inter alia*, systematic communications with at least Skimbot, subject Kremecek to personal jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.

12.     Venue is proper in this Court with respect to all Defendants pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this district and a substantial part of the events giving rise to Skimdevil's claims against Defendants occurred within this District.

13.     Venue is also proper in this District with respect to Defendant Poolzoom pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Poolzoom resides within this District.

## IV.
## BACKGROUND FACTS

### A.     SIMIK AND KREMECEK

14.     Plaintiff's predecessor-in-interest, Skimdevil, LLC ("Skimdevil"), now inactive and acquired by Plaintiff, was formed by Milan Simik, on March 31, 2015.

15.     Milan Simik is an engineer hailing from the Czech Republic and has made United States his home for the past 34 years.

16.     Sometime in 2015, Milan came up with an idea for a solar-powered robotic pool skimming device which gives pool owners an effective, efficient, and environmentally friendly solution for removing debris from the surface of their pools.

17.     Milan had enough savings to finance the business but lacked the technical skills necessary to develop the pool skimmer.  Rather than hiring an unknown engineer or a product developer, Milan looked to his cousin, Defendant Miroslav Kremecek, an engineer living in the Czech Republic, for assistance.

18.     Kremecek, enthusiastic about Milan's idea, agreed to assist Milan with developing the solar-powered robotic pool skimming device (the "Product"), on a condition that Milan (i.e., Skimdevil) would cover all related expenses.  The parties also agreed that Milan, as inventor and founder, would retain rights in all resulting intellectual property.

19.     Milan and Kremecek agreed that in exchange for providing his services, Kremecek would receive a fixed fee from every Product manufactured for sale by Skimdevil. This fixed fee was built into the unit price invoiced by Kremecek and was equal to approximately one fourth of the production cost of the unit.  Accordingly, the invoiced amount included the production cost plus Kremecek's fee.

20.     Together, Milan and Kremecek worked on further refining the Product.  The functionality embodied in the Product was described and claimed in a provisional patent application filed on May 25, 2015, which was converted to U.S. Patent Application No. 15/164,566 ("the '566 Application") and issued as U.S. Patent No. 11,112,799 ("the '799 Patent") on September 7, 2021, a copy of which is attached as **Exhibit A**.

21.     Both Milan and Kremecek assigned their rights in the '566 Application to Skimdevil.

22.     On February 1, 2016, Skimdevil applied for a U.S. trademark for the name SKIMDEVIL for exclusive use with the automatic pool cleaners (the "SKIMDEVIL Mark").  On September 13, 2016, the SKIMDEVIL Mark was registered, a copy of which is attached as **Exhibit B**.

23.     On June 2, 2016, an agreement assigning Milan's and Kremecek's inventions to Skimdevil was recorded with the U.S. Patent and Trademark Office, a copy of which is attached as **Exhibit C.**

B.     **SKIMDEVIL PRODUCT**

24.     At the end of 2015, first prototypes of the Product were developed in the Czech Republic based on the patent-pending designs and subsequently presented to the public at the

Atlantic City Pool and Spa Show in early 2016.  Encouraged by the positive reviews of the prototype, Milan decided to continue building his business.

25.    On or about July 2016, Skimdevil began offering and continues to offer its Product to consumers throughout the United States through its website.  For example, attached hereto as **Exhibit D** is a true and correct copy of the relevant portions of Skimdevil's website offering for sale its solar-powered robotic pool skimming devices.

26.    Skimdevil targeted United States as its "main market" and, as alluded to earlier, has applied for patent and trademark protection here.  In particular, to maximize its sales, Skimdevil targeted southern states with the most swimming pools per capita, such as Texas.

27.    Actual orders made by consumers from Texas represented the second largest portion of orders fulfilled by Skimdevil with respect to other states.

28.    The Product included a number of distinctive color and design features, for example, a white debris basket, a white cover with bright orange trim, dark-gray solar panels placed on top of the cover, a Y-shaped center handle, and orange paddle wheel.



29.    Milan was responsible for designing Product's distinctive overall appearance, including the white and orange color scheme, dynamics, portion and styling.

30.     Through Skimdevil's substantial sales and marketing, customers in the marketplace have come to associate Product's distinctive features, including its color scheme, and overall appearance with Skimdevil's high quality robotic pool skimmers.  Skimdevil became a pioneer in a nascent market of solar-powered robotic pool skimming devices with a small customer base.

## C.     SKIMDEVIL'S MOBILE APPLICATION

31.     On or about 2016, Skimdevil developed a mobile application allowing homeowners to easily monitor and control their pool skimming device to enhance the desirability and distinctiveness of the product (the "Software").  The Software  was implemented for the purpose of marketing, selling, and distributing the Product to Skimdevil customers under the Skimdevil brand name, and for the purpose of generating revenue for Skimdevil.

32.     The Software was developed by a Czech software development company Apps Dev Team s.r.o. ("Apps Dev Team").

33.     The Software contains material wholly original to Skimdevil that is copyrightable subject matter under the laws of the United States.

34.     The graphical user interface of the Software included the SKIMDEVIL Mark, the use of which was explicitly authorized by Skimdevil in a letter to Apps Dev Team for the purposes of developing and publishing the Software.

35.     Skimdevil was responsible for all the costs associated with the development of the Software.

36.     Skimdevil has been offering the Software to its users since at least October 2016.

**D.     SKIMDEVIL EXPANSION AND CONTRACT TERMS**

37.     Despite its best efforts, Skimdevil's sales were limited by its then-current production capacity.  To increase profitability and grow the business, Skimdevil decided to move production to a new facility that could sustain a substantially higher manufacturing rate.  Additionally, in an effort to lower production costs, Skimdevil considered and worked toward certain modifications to the design.

38.     Sometime in August 2017, during his visit to the Czech Republic, Milan shared his plans for expanding Skimdevil with Kremecek.  Kremecek met the idea of growing Skimdevil's operations with enthusiasm and was eager to assist Milan in taking Skimdevil to the "next level."  Kremecek understood that outside capital investments will be used to support Skimdevil's expansion and agreed to execute a formal assignment of his intellectual property rights to Skimdevil.

39.     On or about December 2, 2017, Kremecek entered into an Assignment and Transfer Agreement with Skimdevil, a copy of which is attached as **Exhibit E**.

40.     Under the Assignment and Transfer Agreement, Kremecek  irrevocably, and unconditionally assigned, transferred, and conveyed to Skimdevil and its successors and assigns, all of his right, title, and interest in and to "Skimdevil – solar powered robotic pool skimmer" (i.e., the Product) and associated intellectual property related to the Product and Software including designs, specifications, business practices, procedures, trade secrets, customer lists, and marketing information (the "Skimdevil Proprietary Information").

41.     Section 4 of the Assignment and Transfer Agreement required Kremecek not to:

> directly or indirectly engage or participate in the Restricted Business (as hereinafter defined), other than as businesses partner or Assignee.  "Restricted Business" shall mean the business of manufacturing or selling motorized equipment utilized in the

cleaning of pools, hot tubs or other water filled spaces for a period
of three (3) years.

42.     Kremecek breached Section 4 of the Assignment and Transfer Agreement by selling the solar-powered robotic pool skimmer devices and parts to Skimbot, a direct competitor of Skimdevil.

43.     Section 5 of the Assignment and Transfer Agreement required Kremecek (i.e., Assignor) not to:

> use or disclose any Confidential Information assigned as part of the Assigned Property except for the benefit of Assignee.  Assignor must not disclose such Confidential Information to third parties. Assignor must take reasonable steps to maintain the confidentiality and secrecy of such Confidential Information and to prevent the unauthorized use or disclosure of such Confidential Information.

44.     Section 1.2 of the Assignment and Transfer Agreement defines Confidential information as

> information that is not generally known or readily ascertainable through proper means, whether tangible or intangible, including without limitation algorithms, ideas, designs, formulas, knowhow, methods, processes, programs, prototypes, systems, and techniques.

45.     Section 1.1 of the Assignment and Transfer Agreement defines Assigned Property as "the property listed in Exhibit A and all Intellectual Property and Intellectual Property Rights forming a part of, embodied, in or necessary for use of the property."

46.     Kremecek breached Section 5 of the Assignment and Transfer Agreement by disclosing information about Skimdevil's designs, specifications, business practices, procedures, trade secrets, customer lists, and marketing information (i.e., Skimdevil Proprietary Information) to, at least, Skimbot, in breach of this term of the Agreement.  Skimdevil's proprietary designs,

specifications, documentation, manufacturer, vendor, and customer lists all provided it with independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

47.    Upon executing the Assignment and Transfer Agreement, Kremecek agreed to assist Skimdevil in its expansion efforts, including developing a second, less expensive, robotic pool skimmer.

48.    In 2017, Skimdevil spent substantial resources on securing an agreement with a new production facility, ordering materials and parts, including new molds, for manufacturing the improved Product.

49.    Kremecek assisted Skimdevil with development and manufacturing of the improved Product in exchange for receiving a fixed fee from every Product produced by Skimdevil.

50.    On or about February 2018, Skimdevil received the first shipment of the paid for units of Product manufactured at the newly engaged facility using the new materials and molds, the design of which was explicitly assigned in the Assignment and Transfer Agreement discussed above.

51.    Kremecek failed to deliver the remainder of the paid-for units of Product or account for the funds received from Skimdevil for the purpose of manufacturing the Product.

52.    Kremecek retained a majority of assembled units and parts for which Skimdevil paid.

53.    As a result of Kremecek's failure to turn over the Product, on February 7, 2020, Skimdevil reported an inventory theft in its 2019 partnership income tax filing.

54.     Additionally, Kremecek wrongfully retained all copies of the Software thereby making it impossible for Skimdevil to submit a bona fide copy of the Software for the purpose of obtaining a copyright registration thereto.

55.     The United States Copyright Office refused Skimdevil's request to register copyright in the Software without an acceptable deposit copy of the Software; however, agreed to register it once Skimdevil obtains a lawful possession of the Software.  The refusal to register copyright in the Software by the United States Copyright Office without an acceptable deposit copy of the Software entitles Skimdevil to institute a civil action for infringement under 17 U.S.C. § 411(a).  True and correct copy of the letter from the Copyright Office refusing to register the copyright in the Software attached hereto as **Exhibit F**.

56.     Skimdevil has continuously offered for sale its Skimdevil Product and Software in interstate commerce, and has taken commercially reasonable steps to vigorously protect its intellectual property, including the innovative functionality and distinctive designs of Skimdevil's Product that are protected through the above-mentioned patent application to the United States Patent and Trademark Office that is duly assigned to Skimdevil.

**E.      U.S. Patent No. 11,112,799**

57.     The '799 Patent is entitled "Intelligent Solar Powered Pool Skimming Robot," names Milan Simik and Miroslav Kremecek as inventors, and issued on September 7, 2021. Both Simik and Kremecek assigned their rights in the '799 Patent to Skimdevil.  (Exhibit A, cover.)  The '799 Patent is directed towards autonomous, solar powered pool skimmers (*e.g.*, similar to the example illustrated in the figure below) that includes a hull, paddlewheels with independent motors, distance sensors, and a processing unit that plans and executes a traversal path across the pool surface.  (*Id.* at 1:34-50; Figs. 1, 9.)



Fig. 1

Fig. 9

58.     By using solar power, the claimed autonomous pool skimmer system does not need to be tethered to cables or pulled out of the pool to charge.

59.     The claimed autonomous pool skimmer technology that addresses deficiencies in traditional devices that lack means to avoid being trapped in tight corners and/or the capability of intelligently navigating a pool surface to effectively and efficiently clean debris from the entire pools surface.  (*Id*. at 1:14-30.)  For example, claim 1 of the patent recites:

> 1. An autonomous water skimming system for a pool having a perimeter wall, comprising:
> a body comprising two or more hulls;
> one or more processing units;
> two or more paddlewheels coupled to the body, each paddlewheel driven by an independent motor, wherein the motors are independently controllable by the one or more processing units to support steering;
> two or more distance sensors;
> one or more solar cells;
> a power supply operable to power the one or more processing units and the motor from energy supplied by the one or more solar cells; and
> one or more processing units are configured by the one or more processing modules to navigate a circumference associate with a surface edge of a body of water according to signals associated with the two or more distance sensors, develop a model for a surface geometry of the body of water in response to the

> navigated circumference, plan a series of traversals across the model for the surface geometry of the body of water, and execute the planned series of traversals across the body of water in order to collect debris into a removable basket,
>
> wherein the signals associated with the two o; more distance sensors are processed to establish an approach angle with respect to the perimeter wall of the pool.

60.     Claim 1 of the '799 Patent is directed to and encompasses the Skimdevil Product and/or the Skimdevil Software.

61.     The ''799 Patent also claims several claims that depend from and add limitations to claim 1.  For example, claims 3-5 and 8 depend from claim 1, and further recite:

> 3.  The autonomous water skimming system of claim 1, further comprising one or more rechargeable battery cells.

> 4.  The autonomous water skimming system of claim 1, further comprising a user interface.

> 5.  The autonomous water skimming system of claim 1, further comprising a wireless communications interface.

62.     8.  The autonomous water skimming system of claim 1, wherein the one or more processing units comprise a semiconductor microcontroller.  The dependent claims of the '799 Patent, including, *inter alia*, claims 3-5 and 8, claim features that are practiced by the Skimdevil Product and/or the Skimdevil Software.

63.     Each claim of the '799 Patent is directed to and practiced by the Skimdevil Product and/or the Skimdevil Software.

F.     **SKIMBOT INFRINGEMENT AND THEFT**

64.     On information and belief, Kremecek wrongfully withheld Skimdevil Product and parts, purloined Skimdevil Proprietary Information, trade secrets, and other confidential information, including unauthorized copies of the copyright protectable Software and related source code, and customer lists and offered it to Skimbot.

65.     On account of his role as an inventor on and assignment of his rights in the '566 Application,  Kremecek had actual knowledge of the '566 Application and its pending claims since at least as early as May 25, 2016, and at all times since that date.

66.     Skimbot was formed in Arizona on June 27, 2019 by Paul Anthony Sim, among others.  Paul Sim has also served as a CEO of Solar Pool Technologies, Inc., a known maker of a robotic pool skimmer device, Solar Breeze, since at least 2011.  Kremecek met Paul Sim while attending one of U.S. trade shows on behalf of Skimdevil.

67.     On information and belief, Skimbot was formed in cahoots with Kremecek to acquire Skimdevil Product and parts (*i.e.*, devices manufactured for and paid by Skimdevil and wrongfully retained by Kremecek), Skimdevil Proprietary Information, trade secrets, and other confidential information, including unauthorized copies of the copyright protectable Software and related source code, and customer lists to directly compete with Skimdevil.

68.     Since at least December 22, 2020, Skimbot offered for sale a robotic pool cleaning device named "SKIMLUX" throughout the United States including in the State of Texas.  A copy of the relevant portions of Skimbot's website and Instagram account is attached as **Exhibit G**.

69.     Skimdevil is informed and believes Skimbot's SKIMLUX devices are the very same devices manufactured in the Czech Republic under Kremecek's supervision for Skimdevil but never delivered to Skimdevil.

| SKIMDEVIL PRODUCT | SKIMLUX |
|---|---|
|  | |

70.     Skimdevil did not authorize Skimbot to offer products confusingly similar to Skimdevil's Products.  Similarly, Skimdevil has never authorized Skimbot to use Skimdevil's duly held goodwill and the distinctive trade dress customers have come to recognize when seeking the Skimdevil Product.

71.     Since at least September 3, 2019, Skimbot offered for sale solar-powered robotic pool cleaning device named "SKIMBOT" throughout the United States including in the State of Texas.  A copy of the relevant portions of Skimbot's website and Instagram account is attached as **Exhibit H**.

## The SKIMBOT devices



72.    Skimdevil is informed and believes Skimbot's SKIMBOT devices are manufactured in the Czech Republic under Kremecek's supervision using Skimdevil Proprietary Information, trade secrets, and other confidential information supplied by Kremecek including proprietary designs of at least the printed circuit board (the "PCB"), body molds, and paddle wheels.

73.    Since at least November 13, 2019, Skimbot publicly displayed, demonstrated, distributed and/or sold improperly copied and/or altered copyright protectable Software.

74.    Skimdevil is informed and believes that the software improperly duplicated and/or derived from Skimdevil's copyright protectable Software, currently being marketed by Skimbot as "Skimbot Intelligent Pool Robot", is substantially or confusingly similar to Skimdevil's Software:



SKIMDEVIL Pool Cleaner Mobile App

SKIMBOT Intelligent Robotic Cleaner App



75.     On information and belief, Kremecek provided Software, Product, and Skimdevil Proprietary Information, trade secrets, and other confidential information to Skimbot, including Skimdevil's proprietary designs, specifications, documentation, manufacturer, vendor, and/or customer lists (all trade secrets) for the purpose of leveraging the value of those Skimdevil trade secrets, to significantly reduce the time to market for Skimbot's products and target Skimdevil's customers.

76.     On information and belief, Skimbot intentionally designs, manufactures, markets and/or sells devices that resemble Skimdevil's so closely that consumers are likely to be, and in fact have been, confused as to the source of Skimbot's devices and have bought those devices on the assumption that they were made by Skimdevil.

77.     Skimbot sells its SKIMBOT devices through its website and through various distributors, including PoolZoom, Solar Us Shop.

78.     PoolZoom is one such distributor located in Texas.  In addition to its e-commerce shop, PoolZoom makes SKIMBOT devices available to residents of Texas through its brick and

mortar retail store located in San Antonio. A copy of the relevant portions of PoolZoom's website is attached as **Exhibit I**.

79.    By selling SKIMBOT devices through a Texas distributor PoolZoom, Skimbot either knew or reasonably should have known that its products are being sold by a retailer in a brick and mortar store in the country's second largest state with a high number of per capita pools.

80.    Kremecek sold devices to Skimbot's supply chain, knowing that the United States, including Texas, is the likely destination of his devices.

81.    Skimbot's and PoolZoom's sale of the infringing SKIMBOT devices in the state of Texas caused irreparable harm to Skimdevil (e.g., loss of market share, loss of profits, loss of consumer recognition, and loss of goodwill).

82.    Skimbot falsely identifies the country of origin and the country from which it ships its devices as United States. A copy of the relevant portions of Solar Us Shop website is attached as **Exhibit J**.

83.    On information and belief, Skimbot used the Skimdevil Proprietary Information and trade secrets to, at a minimum, significantly shorten its engineering efforts to create solar-powered robotic pool skimmers that compete with Skimdevil's Products, thus creating a significant but unfair competitive advantage for Skimbot by shortening the time to market and development expense for its products.

84.    If Skimbot had not had access to, known of, and/or misused the Skimdevil Proprietary Information and trade secrets, Skimbot would have been required to engineer their own parts (e.g., PCB, body molds, and paddle wheels) and mobile application which would have greatly increased its time to market at significant financial expense to Skimbot.

85. Skimbot has used and continues to use the Skimdevil Proprietary Information and trade secrets to manufacture robotic pool skimming devices and mobile application that directly compete with Skimdevil's devices.

86. Skimbot knowingly and improperly used the Skimdevil Proprietary Information and trade secrets to unfairly compete with Skimdevil.  Skimbot's use of Skimdevil's trade secrets to unfairly compete with Skimdevil in the nascent solar-powered robotic pool skimmer industry caused irreparable harm to Skimdevil (e.g., loss of market share caused by failure to successfully commercialize this nascent field and loss of reputation, and brand name recognition).

87. Skimdevil has been damaged by Skimbot's actions, at least, by losing sales revenue that would have been attained by Skimdevil if not for Skimbot's unlawful interference.

88. Skimbot and Kremecek coordinated a scheme to misappropriate the Skimdevil Proprietary Information and trade secrets and use that Proprietary Information and those trade secrets to create solar-powered robotic pool skimmers that compete with Skimdevil's Products and cause economic harm to Skimdevil.

89. Skimdevil has been, and will continue to be, harmed by Skimbot's actions because it has lost sales, revenues, and profits, and has been forced to dedicate resources to countering Skimbot's illegal scheme, for example, by increasing its marketing and sales efforts to avoid losing further business to Skimbot's unfair use of the Skimdevil Proprietary Information and trade secrets.

## V.
## FIRST CAUSE OF ACTION

### (Patent Infringement - 35 U.S.C. § 271, against all Defendants)

90. Skimdevil incorporates herein by reference as though set forth in full each and every allegation contained in Paragraphs 1 through 89, inclusive, above.

91.     Defendants have infringed and continue to infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, at least claims 2-5 and 8 (the "Asserted Claims") of the '799 Patent by making, using, testing, selling, offering for sale, or importing into the United States autonomous pool skimmers and/or related software (the "Accused Products") that practice each and every limitation of the Asserted Claims in violation of 35 U.S.C. § 271(a). The Accused Products include the SKIMBOT devices and the SKIMBOT Intelligent Robotic Cleaner App, that Defendants intend and instruct customers of the SKIMBOT devices to download and use together with the SKIMBOT devices.

92.     As illustrated in the figure below, the Accused Products practice each limitation of the Asserted Claims.  For example, as illustrated in the figure below, the Accused Products include an autonomous water skimming system for a pool having a perimeter wall, the system comprising a body comprising two hulls, two paddlewheels, and one or more solar cells, as recited by claim 1.



93.     Defendants further describe the Accused Products in the "skimbot User Manual," a true and correct copy of which is attached hereto as **Exhibit K**.

94.    The skimbot User Manual explains that the SKIMBOT device is propelled around the pool by two paddle wheels located on either side of the unit, and that the paddle wheels can operate independently to rotate the unit.  In other words, the paddlewheels are each driven by an independent motor, and the motors are independently controllable by the processing unit to support steering, also as recited by claim 1.

95.    The SKIMBOT device is also powered by a battery power source that is charged with energy supplied by the solar cells, as recited by claim 1.

96.    The skimbot User Manual also explains that the SKIMBOT device multiple proximity sensors at the front to determine when it is getting close to an obstruction or the edge of the pool (i.e., two or more distance sensors).  The navigation is governed automatically by the software, based on the information it receives from the sensors and input from a mobile device using the SKIMBOT Intelligent Robotic Cleaner App.  In other words, the SKIMBOT device includes a processing unit that controls the paddlewheel motors to support steering, and the processing unit is configured by a processing module (i.e., the app) to navigate the circumference associated with a surface edge of the pool according to signals associated with the distance sensors, as recited by claims 1.

97.    The skimbot User Manual further explains that the automatic navigation feature can be modified using a "Distance to Edge" setting to cause the device to "turn well before it reaches the edge."  In other words, the SKIMBOT device develops a model for a surface geometry of the pool  in response to the navigated circumference (*i.e.*, based on input from the distance sensors), plans a series of traversals across the model for the surface geometry of the pool, and executes the planned series of traversals across the body of water in order to collect debris into a removable basket, and the signals associated with the distance sensors are processed

to establish an approach angle with respect to the perimeter wall of the pool, as recited by claim 1.

98.    The skimbot User Manual further explains that the battery power supply is a rechargeable battery (i.e., a rechargeable Lithium Ion battery) as recited by claim 3.

99.    The skimbot User Manual further explains that the processing unit of the SKIMBOT device is controlled using the SKIMBOT Intelligent Robotic Cleaner App, which includes a user interface, as recited by claim 4.

100.    The skimbot User Manual further explains that the SKIMBOT device communicates with the SKIMBOT Intelligent Robotic Cleaner App on a mobile device using Bluetooth®, and thus, necessarily includes a wireless communication interface as recited by claim 5.

101.    On information and belief, the processing unit of the SKIMBOT device also includes a semiconductor microcontroller, as recited by claim 8.

102.    To the extent required, Skimdevil has complied with all marking requirements under 35 U.S.C. § 287.

103.    Defendants have been and are now indirectly infringing the Asserted Claims of the '799 Patent in violation of 35 U.S.C. § 271(b) at least by actively inducing its customers to directly infringe the Asserted Claims by using the Accused Products and have known and/or been willfully blind that their actions would lead to infringement.  For example, Defendants market and sell the Accused Products through their websites and storefronts, and provide user manuals, video tutorials, and other information that instructs their customers to use the Accused Products in violation of 35 U.S.C. § 271(a).

104.    Defendants have been and are now contributing to infringement of the Asserted Claims in violation of 35 U.S.C. § 271(c) by providing and/or selling components of an infringing system (i.e., the SKIMBOT device, parts for the SKIMBOT device, and/or the SKIMBOT Intelligent Robotic Cleaner App), which are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

105.    As a result of Defendants' acts of infringement, Skimdevil has suffered, will continue to suffer, and is owed damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284.

106.    Defendants' infringement was and is willful, entitling Skimdevil to treble damages under 35 U.S.C. § 284.

107.    Defendants' willful and malicious infringement makes this an exceptional case pursuant to 35 U.S.C. § 285, entitling Skimdevil to recover its reasonable attorneys' fees, costs, and expenses.

108.    Skimdevil has been, and unless Defendants' infringing conduct is enjoined, will continue to be irreparably harmed by Defendants' infringement of the '799 Patent.

## VI.
## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets - 18 U.S.C. § 1836, against Kremecek and Skimbot)

109.    Skimdevil incorporates herein by reference as though set forth in full each and every allegation contained in Paragraphs 1 through 108, inclusive, above.

110.    Skimdevil maintains in confidence and derives significant value from its Proprietary Information and trade secrets, inclusive of its proprietary pool skimming Product, customer information, and vendor information.  Each of these trade secrets has been maintained

in confidence from public view.  Skimdevil derives significant value from the confidential nature of its trade secrets.

111.    Skimdevil exerted reasonable efforts under the circumstances to maintain the confidentiality of its Proprietary Information and trade secrets.  For example, prior to significantly expanding their production efforts, Skimdevil ensured that Kremecek formally assigned all of his right, title, and interest in and to the Product and associated intellectual property related to the Product and Software (i.e., the "Skimdevil Proprietary Information") under the Assignment and Transfer Agreement.  Skimdevil also secured contractual obligations and maintained private communications to ensure that the Skimdevil Proprietary Information would remain confidential.

112.    While working for Skimdevil, Kremecek had access to the Skimdevil Proprietary Information and trade secrets and understood that Skimdevil intended for those trade secrets to be maintained in confidence.  Kremecek knew that Skimdevil derived significant value from the confidential nature of those trade secrets.

113.    Kremecek unlawfully disclosed valuable Skimdevil Proprietary Information and trade secrets to Skimbot.  Kremecek expressly agreed to maintain the trade secrets in confidence when he signed the Assignment and Transfer Agreement.

114.    Skimbot knew or should have reasonably known that information it received from Kremecek included Skimdevil Proprietary Information and trade secrets which Kremecek was obligated, by nature of his Assignment and Transfer Agreement and otherwise, to keep confidential.

115.    Skimbot used the Skimdevil Proprietary Information and trade secrets to enable and/or shorten the time to market for their pool skimming products, form vendor relationships,

target Skimdevil's customers, and undercut Skimdevil's prices, none of which would have been possible, especially not on the relatively short time scale accomplished by Skimbot without knowing and utilizing the Skimdevil Proprietary Information and trade secrets.

116.    Kremecek and Skimbot have intentionally and willfully misappropriated the Skimdevil trade secrets.

117.    Skimdevil has been, and continues to be, irreparably harmed by Kremecek and Skimbot's actions.  Skimdevil will continue to suffer irreparable harm that cannot be adequately remedied at law unless Kremecek and Skimbot are permanently enjoined from further misusing the Skimdevil Proprietary Information and trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(A).

118.    Skimdevil seeks compensatory damages and to enjoin such misappropriation.

119.    As a direct and proximate cause of Kremecek and Skimbot's misappropriation of the Skimdevil trade secrets, Skimdevil has sustained actual damages in an amount to be proven at trial pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(I).

120.    Kremecek and Skimbot have been and will continue to be unjustly enriched as a result of their misappropriation of the Skimdevil trade secrets.  Thus, Skimdevil is entitled to an order disgorging Kremecek and Skimbot of their profits earned as a proximate result of their use of the Skimdevil trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(II).  Alternatively, Skimdevil is entitled to an order requiring Kremecek and Skimbot to pay to Skimdevil a reasonable royalty for Kremecek and Skimbot's unauthorized disclosure and use of the Skimdevil trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(B)(ii).  Skimdevil is also entitled to an award of attorneys' fees and exemplary damages because of the exceptional nature of this case pursuant to 18 U.S.C. §§ 1836(b)(3)(C)-(D).

121.    As a direct and proximate cause of the misappropriation of trade secrets described in this complaint, Kremecek and Skimbot have been unjustly enriched in an amount to be proven at trial.

## VII.
## THIRD CAUSE OF ACTION

**(Misappropriation of Trade Secrets - Texas Uniform Trade Secrets Act, against Kremecek and Skimbot)**

122.    Skimdevil incorporates herein by reference as though set forth in full each and every allegation contained in Paragraphs 1 through 121, inclusive, above.

123.    Kremecek and Skimbot's actions also constitute misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, et seq.– for at least the same reasons as discussed above.

124.    Kremecek and Skimbot's actions constitute misappropriation in violation of the TUTSA, and also constitute willful misappropriation.

125.    As a direct and proximate cause of the misappropriation of trade secrets described in this complaint, Skimdevil has sustained actual damages in an amount to be proven at trial. Skimdevil is also entitled to an award of attorneys' fees.

126.    As a direct and proximate cause of the misappropriation of trade secrets described in this complaint, Kremecek and Skimbot have been unjustly enriched in an amount to be proven at trial.

127.    Skimdevil has also suffered irreparable harm as a result of Kremecek and Skimbot's wrongful activities and will continue to suffer irreparable injury that cannot be adequately remedied at law unless Kremecek and Skimbot, and all persons acting in concert with them, are permanently enjoined from engaging in any further such acts of misappropriation.

## VIII.
## FOURTH CAUSE OF ACTION

### (Conversion, against Kremecek and Skimbot)

128.    Skimdevil incorporates herein by reference as though set forth in full each and every allegation contained in Paragraphs 1 through 127, inclusive, above.

129.    Kremecek and Skimbot improperly obtained and used property owned by Skimdevil, and converted the property to their own benefit and to the detriment of Skimdevil.

130.    As a direct and proximate result of Kremecek and Skimbot's actions, Skimdevil has suffered damages in an amount to be proven at trial.

131.    Kremecek and Skimbot's unlawful actions were willful, wanton, fraudulent, and malicious, and justify an award of exemplary and punitive damages.

## IX.
## FIFTH CAUSE OF ACTION

### (Trade Dress Infringement, 15 U.S.C. §1125(a)(3),
### against Kremecek, Skimbot and PoolZoom)

132.    Skimdevil incorporates and realleges Paragraphs 1 through 131 of this Complaint.

133.    Skimdevil's trade dress consists of at least the following elements as actually used on the Skimdevil products: a combination of a rectangularly shaped device, a white debris basket, a white cover with bright orange trim, dark-gray solar panels placed on top of the cover, a Y-shaped center handle, and orange paddle wheel.

134.    These elements have consistently been marketed under the trade name "Skimdevil" and have generated goodwill and consumer recognition accruing to Skimdevil's solar powered robotic pool skimmer business.

135.    Skimdevil is informed and believes, and thereon alleges, that Skimbot has been designing, marketing, offering for sale and selling products that incorporate Skimdevil's trade

dress that is so similar to Skimdevil's trade dress as to be likely, when used in connection with Skimbot's marketing and sales of its products, to intentionally cause consumers to be confused as to the source of such products and/or to instill in the minds of consumers a false sense of affiliation between Skimbot's products and Skimdevil.

136.   PoolZoom has been marketing, offering for sale and selling products that incorporate Skimdevil's trade dress and/or trade dress that is so similar to Skimdevil's trade dress as to be likely, when used in connection with PoolZoom's marketing and sales of its products, to cause consumers to be intentionally confused as to the source of such products and/or to instill in the minds of consumers a false sense of affiliation between PoolZoom's products and Skimdevil.

137.   Skimbot and PoolZoom are not now, and never have been, authorized by Skimdevil to use Skimdevil's trade dress or any confusingly similar trade dress in connection with the marketing and/or sale of Skimbot and PoolZoom's infringing SKIMBOT or SKIMLUX devices.

138.   Skimdevil has suffered actual damages from Skimbot and PoolZoom's conduct in an amount to be proven at trial.

139.   Skimbot has received wrongful gains from its conduct in an amount to be proven at trial.

140.   Skimdevil is informed and believes, and thereon alleges that, unless restrained by the Court, Skimbot and PoolZoom will continue to infringe Skimdevil's trade dress and that pecuniary compensation will not afford Skimdevil adequate relief for the damage to its trade dress in the public perception.  Further, Skimdevil is informed and believes, and thereon alleges, that in the absence of injunctive relief, customers are likely to continue being mistaken or

deceived as to the true source, origin, sponsorship, and affiliation of Skimbot and PoolZoom's goods.

141.    Skimbot and PoolZoom's acts were committed, and continue to be committed, with actual notice of Skimdevil's exclusive rights and with intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Skimdevil and its Products.   Pursuant to 15 U.S.C. §1117, Skimdevil is therefore entitled to recover three times its actual damages or three times Skimbot and PoolZoom's profits, whichever is greater, together with Skimdevil's attorneys' fees.   In addition, pursuant to 15 U.S.C. §1118, Skimdevil is entitled to an order requiring destruction of all infringing products and promotional materials in Skimbot's possession.

## X.
## SIXTH CAUSE OF ACTION

### (Copyright Infringement against Kremecek and Skimbot)

142.    Skimdevil incorporates herein by reference as though set forth in full each and every allegation contained in Paragraphs 1 through 141, inclusive, above.

143.    Skimdevil's Software is an original work of authorship that constitutes copyright protectable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq.

144.    The refusal to register copyright in the Software by the United States Copyright Office without an acceptable deposit copy of the Software entitles Skimdevil to institute a civil action for infringement under 17 U.S.C. § 411(a).

145.    Kremecek had access to the Software by virtue of working for Skimdevil. Kremecek unlawfully retained the Software, including all copies of the source code, images, and specification.

146.    Skimbot obtained copies of Software from Kremecek.

147.    Skimbot copied and/or altered the Software for use in their own Skimbot mobile

application software product as evident in the user interface:

| Skimdevil Pool Cleaner Mobile App | Skimbot Intelligent Robotic Cleaner App |
|---|---|
|  | |



148.    Skimbot distributed and/or publicly displayed duplications, alterations, or derivative works of Skimdevil's copyright protectable Software when Skimbot demonstrated and/or distributed their own Skimbot mobile application software that is a duplication or alteration of, or substantially similar to and derived from Skimdevil's Software.

149.    By their actions alleged above, Kremecek and Skimbot intentionally copied Skimdevil's Software, and have infringed and will continue to infringe Skimdevil's copyright protectable Software and user graphic interface by reproducing, distributing and preparing derivative works of, Skimdevil's Software without Skimdevil's permissions.  Kremecek and Skimbot's infringement of Skimdevil's copyright protectable Software and interface has been deliberate, willful and in utter disregard of Plaintiff's rights.

150.    Skimdevil is entitled to an injunction restraining Kremecek and Skimbot, their officers, agents and employees and all persons acting in concert or participation with them from engaging in any further such acts in violation of the copyright laws.

151.    Skimdevil has no adequate remedy at law for the injuries currently being suffered, and additional injuries that are threatened.  Kremecek and Skimbot will continue to engage in their wrongful conduct, and Skimdevil will continue to suffer irreparable injury that cannot be

adequately remedied at law unless Kremecek and Skimbot are enjoined from engaging in any further such acts of infringement.  Skimdevil is entitled to a preliminary and permanent injunction restraining Kremecek and Skimbot, other officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

152.    Skimdevil is further entitled to recover from Kremecek and Skimbot the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Kremecek and Skimbot as a result of their acts of infringement alleged above.  At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Skimdevil.

153.    Kremecek and Skimbot have obtained unjust profits, gains and advantages as a result of their infringement, and will continue to realize unjust profits, gains and advantages as a result of their infringement as long as such infringement is permitted to continue.  Skimdevil is entitled to recover from Kremecek and Skimbot their profits, in an amount to be proven at trial.

## XI.
## SEVENTH CAUSE OF ACTION

### (Intentional Interference with an Economic Advantage,
### against Kremecek and Skimbot)

154.    Skimdevil incorporates herein by reference as though set forth in full each and every allegation contained in Paragraphs 1 through 153, inclusive, above.

155.    Skimdevil has created a network of vendor and customer relationships that include agreements and understandings as to cost of materials, order quantities, pricing, and expected annual sales.  Skimdevil derives significant value and economic benefit from its ongoing vendor and customer relationships and information derived from these relationships, and had a firm and reasonable expectation that such relationships would continue into the future.

156.    By nature of his employment with Skimdevil, Kremecek had intimate knowledge of Skimdevil's vendor and customer relationships; information with unique value and not generally known in the market.

157.    Kremecek disclosed his knowledge of Skimdevil's proprietary design, customer and vendor relationships to Skimbot.  Skimbot has obtained and used this information through its relationship with Kremecek, as well as other Skimdevil Proprietary Information and trade secrets, to solicit and interfere with Skimdevil's economic relationships with its vendors and customers.

158.    Kremecek and Skimbot acted independently of any contractual or business relationship that existed between Skimdevil and its vendors or customers.  Kremecek and Skimbot's actions fall outside the boundaries of fair competition.

159.    Kremecek and Skimbot intended to induce a breach and otherwise interfere with the economic and/or contractual relationships between Skimdevil and its customers and between Skimdevil and its vendors.

160.    As a direct and proximate result of Kremecek and Skimbot's tortious interference with Skimdevil's economic and/or contractual relationships with its vendors and customers, Skimdevil has been damaged in an amount that will be shown according to proof at time of trial. Skimdevil's damages include, but are not limited to, lost revenue and profits, and all costs incurred to remedy the improper use of Skimdevil's confidential and proprietary information or trade secrets.

161.    The above actions of Kremecek and Skimbot were willful, wanton, fraudulent, and malicious, and justify an award of exemplary and punitive damages.

## XII.
## EIGHTH CAUSE OF ACTION

### (Breach of Contract, against Kremecek)

162.    Skimdevil incorporates herein by reference as though set forth in full each and every allegation contained in Paragraphs 1 through 161, inclusive, above.

163.    The Assignment and Transfer Agreement executed by Skimdevil and Kremecek is a valid and enforceable contract restricting Kremecek's ability to disclose any Confidential Information assigned under the Agreement.

164.    These restrictions reasonably protect Skimdevil's legitimate business interests, including its confidential information, goodwill among customers, and protected business relationships.

165.    Skimdevil has fully performed its contractual obligations with Kremecek under the Assignment and Transfer Agreement.

166.    Kremecek violated the Assignment and Transfer Agreement by failing to comply with its obligation under the Assignment and Transfer Agreement, by disclosing and otherwise using Skimdevil's confidential and proprietary information and by participate in the business of manufacturing or selling motorized equipment utilized in the cleaning of pools.

167.    Skimdevil has suffered and will continue to suffer damages and irreparable harm as a result of Kremecek's breach of contract, including loss of its business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees.

168.    Skimdevil's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory and punitive relief.

169.     Kremecek's actions will continue to cause harm to Skimdevil if not restrained by an injunction.   Furthermore, Kremecek agreed injunctive relief would be an appropriate remedy in the event he breached the Assignment and Transfer Agreement.

## XIII.
## NINTH CAUSE OF ACTION

### (Unfair Competition Under 15 U.S.C. § 1125(a), against Skimbot)

170.     Skimdevil incorporates and realleges Paragraphs 1 through 169 of this Complaint.

171.     The acts of Skimbot complained of above are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association as to the origin, sponsorship, or approval of Skimbot's and Skimdevil's goods based at least on the similarity in appearance and commercial impression between the competing products using Skimdevil's unique product trade dress.   Moreover, the acts of Skimbot complained of above misrepresent the nature, characteristics, or qualities of Skimbot's and Skimdevil's goods.    These acts thus constitute false designation of origin and/or affiliation, false or misleading description of fact, or false or misleading representation of fact, in violation of 15 U.S.C. §1125(a).

172.     Skimdevil is informed and believes that Skimbot's acts include, for example, offering Skimbot's SKIMBOT and SKIMLUX devices for sale and falsely identifying the country of origin as United States and piggybacking off Skimdevil's goodwill, by copying the distinctive features, designs and appearances of Skimdevil's products.

173.     Skimdevil has suffered and will continue to suffer damages from Skimbot's conduct in an amount to be proven at trial.

174.     Skimbot has received and will continue to receive wrongful gains from its conduct in an amount to be proven at trial.

175.    Skimdevil is informed and believes, and thereon alleges that, unless restrained by the Court, Skimbot will continue to designate falsely the origin of its goods and causing irreparable damage to Skimdevil.  Pecuniary compensation will not afford Skimdevil adequate relief for its resulting damages.  Further, Skimdevil is informed and believes, and thereon alleges, that in the absence of injunctive relief, customers are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Skimbot's goods.

176.    Skimdevil is informed and believes, and thereon alleges, that Skimbot's acts were committed, and continue to be committed, with actual notice of Skimdevil's exclusive rights and with intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Skimdevil and its Product.  Pursuant to 15 U.S.C. §1117, Skimdevil is therefore entitled to recover three times its actual damages or three times Skimbot's profits, whichever is greater, together with Skimdevil's attorneys' fees.  In addition, pursuant to 15 U.S.C. §1118, Skimdevil is entitled to an order requiring destruction of all infringing products and promotional materials in Skimbot's possession.

## PRAYER

WHEREFORE, Skimdevil prays for a judgment and order that:

(a)    Defendants are liable to Skimdevil on all causes of action;

(b)    Defendants are liable for infringing one or more claims of the '799 Patent, directly and/or indirectly, literally and/or under the doctrine of equivalents under 35 U.S.C. § 271;

(c)    Defendants pay damages sufficient to compensate Skimdevil for Defendants' infringement pursuant to 35 U.S.C. § 284;

(d)    Defendants be subject to an accounting for infringement not presented at trial and an award of additional damages for any such infringement;

(e)     Defendants' infringement was and is willful and increasing the damages up to three times under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

(f)     This action be determined to be an exceptional case under 35 U.S.C. § 285 and awarding Skimdevil its reasonable attorneys' fees, costs, and expenses;

(g)     Defendants', and their officers, agents, servants, employees, and all persons acting in concert or participation with them, be permanently enjoined from further infringing, both directly and indirectly, the '799 Patent;

(h)     Defendants, and their officers, agents, servants, employees, and all persons acting in concert or participation with them, be permanently enjoined from directly or indirectly using or communicating to any person any of the Skimdevil Proprietary Information and trade secrets, Software, source code, or any copies or alternations therefor, or other proprietary and confidential information;

(i)     Defendants deliver to Skimdevil all inventory, components, parts, and/or products, source code, software, and other materials that Defendants obtained or manufactured using the Skimdevil Proprietary Information and trade secrets;

(j)     Defendants pay Skimdevil all actual damages as alleged herein and proven at trial on the basis of Defendants' unlawful acts;

(k)     Defendants be disgorged of and required to pay to Skimdevil all of the profits Defendants earned as a proximate result of Defendants' breach of contract and wrongful acts, including disclosure and use of the Skimdevil trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(II);

(l)     Defendants pay to Skimdevil a reasonable royalty for Defendants'

disclosure and use of the Skimdevil trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(B)(ii);

(m)   Defendants pay Skimdevil exemplary damages of double the actual damages against Defendants pursuant to 18 U.S.C. § 1836(b)(3)(C) and § Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, et seq.;

(n)   Defendants pay Skimdevil all of its attorneys' fees and all out-of-pocket expenses incurred to pursue this action pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, et seq., and any other applicable statutory, contractual, or legal authority authorizing an award of attorneys' fees to the prevailing party;

(o)   Defendants impound any infringing goods, means for reproducing infringing goods, and records documenting the manufacture, sale or receipt of things involved in Defendants' infringement pursuant to 17 U.S.C. § 503(a);

(p)   Defendants destroy any infringing goods and means for reproducing infringing goods pursuant to 17 U.S.C. § 503(b);

(q)   Defendants be subject to an accounting of their profits resulting from their copyright infringement, which are the subject of this suit, and that such profits be increased under 17 U.S.C. §§ 504 and 1203;

(r)   Defendants' be subject to an accounting of their profits resulting from their false designation of origin and affiliation and unfair competition, which are the subject of this suit, and that such profits be increased under 15 U.S.C. § 1117;

(s)   A constructive trust be imposed for the benefit of Skimdevil, consisting of all revenues received by Defendants, as a result of their wrongful conduct which should rightfully have been received by Skimdevil and all profits derived from that wrongful conduct, and directing Defendants to pay all such sums to Skimdevil;

(t)     Skimdevil recover its damages, in an as yet undetermined amount, resulting from the above-alleged false designation of origin and unfair competition of Defendants;

(u)     Defendants pay Skimdevil prejudgment interest at the maximum rate allowed by law;

(v)     Defendants pay Skimdevil all of its costs and out of pocket expenses incurred in this action;

(w)     Defendants pay Skimdevil punitive damages in an amount to be determined; and

(x)     Provides any other remedy to which Skimdevil may be entitled under the law, and any other further relief as the Court may deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests a trial by jury on all issues so triable in this action.

Dated September 13, 2021          Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP

By: _____
      Jason E. Mueller
       Texas Bar No. 24047571
       jmueller@sheppardmullin.com

      2200 Ross Avenue, Suite 2000
      Dallas, Texas 75201
      Phone: (469) 391-7400
      Fax: (469) 391-7401

      Jesse A. Salen, pro hac pending
       jsalen@sheppardmullin.com
      Ilona M. Wheat, pro hac pending
       iwheat@sheppardmullin.com

      12275 El Camino Real, Suite 100
      San Diego, California 92130
      Phone: (858) 720-8900

      **ATTORNEYS FOR PLAINTIFF
      SKIMDEVIL PURE, L.L.C.**